# Richmond.

## FISHER v. DICKENSON.

### JANUARY 12th, 1888.

1. DECREES—*Construction—Fraudulent conveyances—Case at bar.*—Bill to en-
   force judgment lien, alleged prior trust deed to be fraudulent or satis-
   fied. Debtor denied the allegation, and charged the judgment to be
   usurious. Account of liens was taken. Report did not sustain charge
   of usury, nor allude to trust deed, which was not filed with the bill, and
   was at no time before the master or the court. No evidence was pre-
   sented tending to prove the alleged fraud or satisfaction. Report was
   excepted to, but it was confirmed, and the land decreed to be sold.
   Upon appeal here, the decree, which was silent as to the trust deed,
   was reversed, and the judgment reduced by reason of the manifest
   usury to the principal loaned, and the cause remanded :

HELD :
>    These decrees are not to be construed as adjudging by implication, the
>        trust deed to be fraudulent or satisfied, when no decree expressly so
>        adjudges, and when, if any did so adjudge, it would be in opposi-
>        tion to evidence to the contrary.

2. CHANCERY PRACTICE—*Depositions—Case at bar.*—Term began on 25th,
   depositions were taken on 24th and 25th October, 1884. Counsel of both
   parties were present and examined and cross-examined the witnesses
   on the first day, when the taking was adjourned to the next day. Final
   decree was rendered on the 30th. No objections were made to the read-
   ing until the hearing.

HELD :
>    The depositions were admissible.

3. TRUSTEES—*Death—Successor.*—Under section 9, chapter 174, Code 1873,
   personal representative of sole trustee may execute the trust. Yet,
   under section 8 of same chapter, the county court may appoint a trustee
   to execute the trust, and the appointment, when made conformably with
   the statute, is valid.

4. IDEM—*Sale under trust deed—Case at bar.*—Sale of the land under said prior trust deed by the substituted trustee to whom the purchase money has been paid by the purchaser, who has received a conveyance from the former, is valid, and is unaffected by the decrees in the suit to enforce said judgment lien, whereto neither said trustee nor said purchaser was a party.

Argued at Wytheville.  Decided at Richmond.

Appeal from decree of circuit court of Franklin county, rendered October 30th, 1884, in the chancery causes of *Dickenson* v. *Thompson* and *Peter L. Fisher* v. *Dickenson,* heard together. The decree being adverse to the said Fisher, he obtained an appeal and *supersedeas.*  Opinion states the case.

*G. W. & L. C. Hansbrough* and *Charles E. Dabney,* for the appellant.

*George E. Dennis* and *Peter Dillard,* for the appellee.

RICHARDSON, J., delivered the opinion of the court.

The facts and proceedings are voluminous—hence a succinct statement of them is essential to a proper understanding of the questions at issue.  By a trust deed, dated July 21st, 1848, W. P. Thompson conveyed his tract of land containing 270 acres, situated in said county, to Cyrus Price, trustee, to secure certain debts to Warfield Price, on which there was owing to him when the land was sold, May 5th, 1883, the sum of $5,103 50.

On the 3d of March, 1862, in the county court of said county, there was rendered a judgment in the name of L. H. Turnbull for the benefit of Randolph Dickenson, against W. P. Thompson and others.  In August, 1877, Dickenson brought a creditor's bill in said circuit court to enforce the lien of said judgment upon said land, which had never been sold under

said trust deed, and which, agreeably to its terms, still remained in the possession of said W. P. Thompson, the grantor in said deed of trust. In his said bill, Dickenson charged that this trust deed was fraudulent, or that the debts secured thereby had long been paid. The parties to said judgment and trust deed, their representatives or assigns, were made defendants. G. W. Price, as administrator of the deceased trustee, Cyrus Price, and Sparrel F. Simmons, the alleged assignee of Warfield Price, were also made defendants. No copy of the trust deed was exhibited with the bill, nor was filed with the papers, nor was said deed ever before the court in the progress of this litigation. Yet the bill prayed that the trust deed be decreed fraudulent and void, and that the proper accounts be taken, and the land sold to pay the judgment.

The process to begin the suit was returned executed to September rules as to all the defendants, except Warfield Price and Sparrel F. Simmons; but at said rules, the clerk entered decrees *nisi* against all the defendants, and at the succeeding October rules took the bill for confessed as to all of them, and set the cause for hearing. On the 10th of October, 1877, a vacation decree was made directing a commissioner to take an account of the real estate of W. P. Thompson, and of its rental value, and of liens.

At November term, 1877, W. P. Thompson, the only defendant who ever appeared in the cause, filed his answer, setting up the defence of usury to the judgment and denying the charge of fraud or satisfaction as to the trust deed, and asking for an issue as to the question of usury. At the same term Commissioner Carper returned his report. Though the vacation decree ordered the commissioner to give notice of the time and place of taking said account by service of such notice on all the parties to the suit, he does not report that he did so, but only says he issued such notices and placed them in the hands of the sheriff, without adding that there had been service thereof, or filing the sheriff's official return to that effect. None of the

defendants did appear before the commissioner, except W. P. Thompson, who asked for, but was refused, a continuance, for the reason that both his counsel and witnesses were absent. The commissioner's report made no allusion to the trust deed, which was never before either the commissioner or the circuit court. W. P. Thompson also filed his demurrer to the bill, and, by leave of the court, also filed his cross-bill in relation to the question of usury, which was taken for confessed.

At the November term, 1878, the two causes were heard together, and the court, without passing on any other question, directed an issue as to the question of usury. At May term, 1879, a decree was entered, setting aside the issue and dismissing the cross-bill, and recommitting the commissioner's report for further accounts of real estate and liens and credits on said judgment.

At October term, 1879, the cause was heard on the papers formerly read, the recommitted report and exceptions thereto. The first report was confirmed, and the land directed to be sold by special commissioners Griffin and Nelson. From this decree an appeal was taken, and this court, on the 14th October, 1881, reversed the decree and rendered the judgment, on account of usury, to $2,665 40, the amount of the principal loaned, and in other respects affirmed the decree and remanded the cause for further proceedings.

In January, 1883, W. P. Thompson obtained an injunction to the sale of the land that had been advertised under the decree of October 31st, 1879; and at the May term, 1883, the causes came on to be heard together, the first on the papers formerly read; the second on the injunction bill and Dickenson's answer and motion to dissolve. The court, without deciding the motion, continued both causes, directed the taking of further accounts of liens, and added that "Peter L. Fisher, the alleged purchaser of the land in litigation in this cause, be made defendant and allowed to assert his rights by answer or

petition, as he may prefer, he waives by counsel now a formal amendment of the bill."

At October term, 1883, the original cause of *Dickenson* v. *Thompson* and the injunction of *Thompson* v. *Dickenson* came on to be heard on the papers formerly read, and on Dickenson's motion to dissolve the injunction; and the injunction was dissolved and the bill dismissed. Again, in January, 1884, W. P. Thompson obtained an injunction; and, at May term, 1884, the two causes were heard and the injunction again dissolved. No commissioner's report of liens as directed by the decrees of November term, 1882, and May term, 1883, were ever returned. Not until after the close of the May term, 1884, did Peter L. Fisher, the appellant here, learn that he had been made a party, on his own motion by counsel, to the suit of *Dickenson* v. *Thompson*, and that he had waived, as it seemed by the record, a formal amendment of the bill. He then caused the papers to be examined, and procured an injunction to the sale advertised under the decree of October 31st, 1879. His cause was matured at rules—the defendant, Dickenson, filing his answer at July rules, 1884. In his bill, Fisher averred that without notice of Dickenson's claim, he was a purchaser for value of the 270 acres of land in litigation; that he had bought the same at a public sale thereof made May 5th, 1883, by Thomas C. Calloway, who had been duly substituted by an order of the county court of Franklin county, made April 5th, 1883, on the motion of the grantor, after due notice to all concerned, as trustee in the place of the original trustee, Cyrus Price, deceased, in the trust deed under which the sale of said land was made by said Calloway, substituted trustee as aforesaid, to him, Fisher, which trust deed was executed June 21st, 1848, by W. P. Thompson, whereby said land was conveyed to said original trustee in trust to secure certain debts to Warfield Price; that said trust deed had been duly recorded in said county on 23d June, 1848, and the lien

thereof was the paramount lien on said land, and the debt secured thereby exceeded the sum for which the land was sold; that the sale was made on the terms prescribed by said deed, and after advertisement specified therein, and at the requisition of said Warfield Price; that there were a number of persons present—among whom were the grantor and the beneficiary, and several bidders; of whom he, Fisher, was the highest, and that the land was knocked off to him at the sum of $2,500, which he paid cash to said substituted trustee and received from him a deed therefor, and got and still holds possession thereof; that the land sold for its full value; and that he made the purchase on the faith of the lien of the said trust deed, and of the substituted trustee's authority to sell, and without any reason to suspect, or any intimation from any source that there was any doubt, and that no objection was made to the sale; and that not long after the sale and the receipt of his deed, he heard that Dickenson was taking proceedings to enforce a judgment against Thompson and others; but that having ascertained that the judgment was long subsequent to the trust deed, and finding that Dickenson was taking no steps against him, he rested securely on his purchase and deed; that it was only when he learned that the land was actually advertised for sale under the decree of May, 1884, that he employed counsel, had the papers examined, and found to his astonishment that he had been made a party a year before on his own motion by counsel. And the bill denied that he had any previous knowledge of such proceeding, and that he had employed any counsel, or authorized any person to act for him in that respect, or that he had knowledge or notice of such action. Dickenson did not demur to Fisher's bill, but answered it. He did not controvert the allegations as to the substitution of Calloway as trustee in the deed of trust, his due advertisement, his sale of the land, its purchase by and conveyance to Fisher, and the fairness of the price; but charged that all these proceedings were contrived by W. P. Thompson as a

device to avoid a real sale of the land; and also that Fisher had made himself a party to the suit by his counsel, Judge Whittle and Colonel Sims.

With his bill, Fisher filed copies of said trust deed, of certain bonds, &c., tending to show the origin and *bona fides* of Warfield Price's debt which was secured by said deed of trust, of the order of the county court substituting Calloway in place of the original trustee, who had died in 1874, and of the trustee's receipt to him for the $2,500, the purchase price of the land; and he took the depositions of himself, of W. P. Thompson, óf Warfield Price, of T. C. Calloway, of Judge Whittle, and two others, tending strongly to establish satisfactorily how the debt secured to Warfield Price had originated; that it had never been paid; why the trust deed had never been enforced until May 5th, 1883; that Warfield Price and Sparrel F. Simmons, his alleged assignee in bankruptcy, had never been served with process to answer Dickenson's bill, Warfield Price testifying that he had never been served with such process and had never appeared in the suit, and that Simmons had for many years before the institution of the suit, resided, and still resided, in the county of Roanoke, and that Fisher was a purchaser for value of said land without notice of Dickenson's claim thereto; that he had paid the purchase money, $2,500, received a conveyance, and been put in possession of the land; that he never employed, or authorized any one to employ, counsel to appear for him and make him a party to the suit of *Dickenson* v. *Thompson*, and had no knowledge of such appearance for him until the land was advertised for sale by Griffin and Nelson under the decree of May, 1884.

On his part, Dickenson presented no evidence, either documentary or parol. Nevertheless, on the 30th October, 1884, the said causes of *Fisher* v. *Dickenson* and of *Dickenson* v. *Thompson*, came on together to be heard, the second on the papers therein formerly read; the first on the bill of the complainant, the answer of the defendant, Dickenson, and the

general replication thereto, on his motion to dissolve the injunction, on the depositions of witnesses taken previous to October 24th, 1884, the first day of the then present term of court, and the depositions taken during that term and the exceptions to the latter; and the court, considering the cause, sustained the exceptions to the reading of the depositions of Peter L. Fisher and Warfield Price, on the ground that they had been taken during the then October term of the court, 1884, and dissolved the injunction in *Fisher* v. *Dickenson* and dismissed the bill with costs in favor of the defendant, Dickenson. And from this decree the said Fisher obtained from one of the judges of this court an appeal and writ of *supersedeas.*

The first assignment of error to the action of the court below is its ruling that sustains the appellee's exceptions to the reading of the depositions of Warfield Price and Peter L. Fisher, taken on behalf of the appellant, during the term at which the final decree was rendered. The term began on the 25th day of October, 1884. The depositions excepted to were taken respectively on the 24th and 25th. The final decree was rendered on the 30th day of that month. Code 1873, ch. 172, § 36, says: "In a suit in equity, a deposition may be read if returned before the hearing of the cause, or though after an interlocutory decree, if it be as to matter not thereby adjudged, and be returned before a final decree." It is true, the statute gives no absolute right, and only provides that the depositions in such case *may be read.* See *Summers* v. *Darne,* 31 Gratt., 761; *Richardson* v. *Duble,* 33 Gratt., 730. It is, therefore, a question of sound judicial discretion to be exercised by the court in view of all the attendant circumstances. But in the case at bar there had been no interlocutory decree, nor had there been any unreasonable delay. The taking of the depositions was begun in the presence of the appellee's counsel, who cross-examined the witness that first deposed, and the completion of the second was adjourned over until the next

day, all without any objection on the part of appellee's counsel. And, moreover, there are no exceptions to the reading of these depositions apparent anywhere on the face of the record. They must, then, have been made at the hearing for the first time, as there is no mention of any exceptions, save in the decree itself. This seems to have been an undue advantage taken of the appellant, who might have got a continuance in order to retake the depositions, had the objection been made known in time.

As to the depositions themselves, they certainly contain evidence which is very material, if not actually decisive of the issues before the circuit court. For these reasons we are of opinion that the circuit court erred in sustaining the exceptions to the reading of the two depositions.

The second assignment of error is, that the circuit court, by the decree complained of, dissolved the complainant's injunction and dismissed his bill with costs, &c., when, on the other hand, it should have perpetuated that injunction.

After a very careful examination of the voluminous record, we are of opinion that this assignment of error is well taken. All the evidence adduced in the cause is in behalf of the appellant, the appellee having examined no witnesses, and presented little, if any, documentary proof of the allegations whereon he founded his claims to recover. In the first place, he set up a judgment which is confessedly junior to the trust deed executed in 1848 by W. P. Thompson to secure a debt to Warfield Price, that at the date of the sale of the 270 acres of land under the trust deed, by the substituted trustee to the appellant, amounted to more than double the price which the land brought; which price, the witnesses all say was its full value. Yet the appellee claims that his junior judgment was a lien on said land paramount to the rights of Warfield Price under said trust deed, and consequently superior to the claims of the appellant, who purchased and holds thereunder. And to

uphold this contention, the appellee alleges that said deed was fraudulent and void, or the debt thereby secured had long before been paid.

Of these allegations, he not only presents no proof, but they are actually disproved. Whilst the burden of proving the alleged fraud or payment rests on him, he not only failed to produce an item of evidence tending to establish their truth, either before the circuit court or its commissioner, but failed even to produce before either the assailed deed. The record leaves some doubt on our minds, even in the face of the well known rules of presumption as to the correctness of the proceedings of courts of general jurisdiction, whether or not those especially interested in setting up the deed of trust, ever were served with process to appear either before the court or the commissioner, and defend their rights under it. But there can be no doubt that the question of its validity was never considered either by the commissioner in making, or by the circuit court in confirming, the then report of liens, or by this court, when on appeal here from the decree of October 31st, 1879, it reversed that decree in so far as it refused relief to the appellant, Thompson, against the manifest usury in the judgment sought to be enforced against him by Dickenson, and affirmed the decree as respected the report of liens as it then stood, and remanded the cause for further proceedings. After the cause went back, the circuit court directed additional accounts of liens, but finally dissolved all injunctions and allowed the sale of the land, without having compelled a return of a report of the accounts it had ordered. It would be monstrous to construe any of the decrees found in the record as adjudging by mere implication that a trust deed was fraudulent, or had been satisfied, when no decree expressly so adjudges, and when, if it did so, it would be in direct opposition to pointed and express evidence to the contrary.

This court is of opinion that the substitution of Calloway as trustee in said trust deed in the place of the original trustee,

Cyrus Price, who had died before Dickenson brought his creditors' bill, by the county court of Franklin, was a legal and valid proceeding. It was inaugurated and completed under Code 1873, chapter 174, sections 8 and 9, and was in entire conformity with the provisions therein contained.

Section 8 provides that in any case where a trustee in any deed of trust shall have died, any person interested in the execution of the deed may apply by motion to the county court of any county in which said deed is recorded, who may appoint a trustee in the place of the trustee named therein; and the trustee so appointed and accepting the same, shall be substituted to all the rights, powers, duties, and responsibilities of the trustee named in said deed: provided that the grantor and grantee in said deed, their heirs or personal representatives, the creditor, surety, or other persons intended to be secured thereby, or their personal representatives, shall have ten days' notice of the motion.

On behalf of the appellee, it is insisted that this proceeding was illegal. It is contended that Cyrus Price, the original trustee, being dead, the trust devolved on his administrator, G. W. Price, and that if another trustee ought to have been appointed, it could and properly should have been done in this suit, citing the same sections (8 and 9) of chapter 174, Code 1873.

It is true that, according to section 9, the personal representative of a sole trustee shall execute the trust, unless some other trustee be appointed by a court having jurisdiction of the case. And G. W. Price, as such administrator, might have executed this trust; but he did not undertake to do so, and the county court in the exercise of jurisdiction expressly conferred upon it by statute, (sec. 8) did appoint Calloway as such trustee.

And it is also true that, according to section 8, in any suit in equity in which it appears that a trustee has died, although the heirs of such trustee be not parties to the suit, yet if his personal representative and others interested, be parties, the

court may appoint another trustee in the place of him who died. This appears to mean that the court wherein the suit is pending may appoint a trustee in the place of one who, being a party to the suit, has died pending the suit. But whether this be the meaning or not, the circuit court of Franklin failed to appoint in the suit a trustee in the place of Cyrus Price, and the county court, exercising the authority, plainly conferred, to appoint one, "in any case where a trustee in any deed of trust shall die," did make the appointment of Calloway to fill the vacant trusteeship. The appointment was, therefore, lawful, and the trustee thus appointed should have been made a party to the suit before the pronouncement of the decree complained of. A trustee holding the legal title is always a necessary party to any suit wherein the trust subject is in litigation, and it is error to enter a decree disposing of the trust subject in his absence as a party. *Horton* v. *Bond*, 28 Gratt., 815; *Clough* v. *Thompson*, 7 Gratt., 26; 1 Daniel's Chy. Pr., 193, and cases cited.

It appearing from the evidence in the record that the 270 acres of land in controversy was subject, first, to be sold under the trust deed in order to satisfy the debt of over $5,000 owing to Warfield Price and secured therein; and that the sale of said land thereunder, on the 5th of May, 1883, by the substituted trustee, at the instance of the trust creditor, to the appellant, was fair, for an adequate price, and agreeable to the terms prescribed, and that the appellant paid the purchase money to the substituted trustee and received from him a conveyance and delivery of possession of said land, it follows irresistibly that he has acquired a valid title thereto, and is not in any way affected by the decrees of the said circuit court in the cause of *Dickenson* v. *Thompson*, to which, in no regular or lawful sense, had he ever been made a party, the evidence clearly proving that he neither appeared in said cause, nor was summoned to appear, nor employed any attorney to appear for him, nor authorized any one else to employ one for that purpose,

nor had any knowledge of any such appearance by anybody for him.

We are, therefore, of opinion to reverse and annul the decree complained of, with costs to the appellant in the court below and in this court, and to enter a decree here perpetuating the injunction awarded the appellant, which injunction was dissolved by the decree appealed from.

DECREE REVERSED.